## Price Bar, Inc. Liquor License Case.

Argued March 17, 1964.   Before Rhodes, P. J., Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ.

*Thomas J. Shannon,* Assistant Attorney General, with him *I. Harry Checchio,* Special Assistant Attorney General, and *Walter E. Alessandroni,* Attorney General, for Pennsylvania Liquor Control Board, appellant, submitted a brief.

*Charles Basch,* with him *I. Leonard Hoffman* and *Charles R. Weiner,* for appellees.

OPINION BY WATKINS, J., June 11, 1964:

This appeal is by the Pennsylvania Liquor Control Board from an order of the Court of Quarter Sessions for the County of Philadelphia reversing an order of the Board that revoked the restaurant liquor license of appellee, Price Bar, Incorporated.

The facts appear to be as follows: Price Bar, Inc., is a Pennsylvania corporation and the holder of a restaurant liquor license for many years. In 1963 one Harold Oxman, and one John R. Daly, were the two principal stockholders of the corporation; Daly serving as President and as a director, and Oxman also was an officer and director with others.

In January, 1963, Daly was convicted of poolselling and bookmaking in the Court of Quarter Sessions of Philadelphia County and was sentenced to pay a fine of $100 or 90 days imprisonment on each charge. He was also convicted of aiding and abetting in embezzlement of funds of the First Pennsylvania Company and also aiding and abetting in the misapplication of funds and credit of said company and on June 20, 1963, was sentenced to prison for 180 days on one count and placed on probation on the other charges. Subsequently, at the demand of the majority of the directors he resigned as an officer and director of Price Bar, Inc.

On February 27, 1963, the Pennsylvania Liquor Control Board issued a citation to the appellee to show cause why its license should not be revoked and after a waiver of hearing, issued the revocation order. The Board had not acted upon an application to transfer the license in question which was on file since October, 1962.

There are two minor violations against the licensee's record during prior years. An appeal to this Court in

a case such as is now before us is in the nature of a broad certiorari. The facts, not being in dispute, we must determine whether there has been an error of law committed. *Heights Fire Company Liquor License Case,* 181 Pa. Superior Ct. 56, 121 A. 2d 902 (1956); *Barbato Liquor License Case,* 188 Pa. Superior Ct. 548, 149 A. 2d 539 (1959).

The Board contends that under the Act of April 12, 1951, P. L. 90, §471, 47 PS §4-471, as amended by Act of September 15, 1961, P. L. 1325, the revocation is warranted as being "other sufficient cause shown." That the conviction of one stockholder of a corporate licensee for crimes in no way connected with the licensed business and not committed on the licensed premises would cause the corporation to be of such bad reputation that it should not be permitted to hold a restaurant liquor license; and that we should disregard the corporate entity and treat it as individuals are treated.

A bona fide Pennsylvania corporation is a distinct legal entity and we cannot disregard the host of statutory and case law regarding the same just because it happens that a corporation is a licensee under the Commonwealth liquor laws.

It is true that the courts have used the equitable doctrine of piercing the corporate veil to prevent the perpetration of wrong; to prevent its use as a shield for illegal and wrongful conduct; or where its use, as a technical device, brings about injustice or an inequitable situation so that justice and public policy demand it be ignored. However, we have not done so where the rights of innocent parties are involved and the corporation is used for a legal purpose, as otherwise the entire theory of the corporate entity would be made useless. *Barium Steel Corp. v. Wiley,* 379 Pa. 38, 108 A. 2d 336 (1954); *Tucker v. Binenstock,* 310 Pa. 254, 165 A. 247 (1933).

The most recent use of the equitable doctrine of piercing the corporate veil is in unemployment compensation cases. It has been held that where the corporate entity is used to conceal self-employment "the board is not required to ignore the true state of affairs and regard the claimants merely as employes of the corporate entity", when, in fact, they are unemployed businessmen not entitled to benefits from the unemployment compensation fund. *DePriest Unempl. Compensation Case,* 196 Pa. Superior Ct. 612, 615, 177 A. 2d 20 (1961); *Hyman Unempl. Compensation Case,* 199 Pa. Superior Ct. 532, 185 A. 2d 821 (1962).

In this case the shares are held by Daly and Oxman, each owning 50 shares. These shareholders are not related to each other in any way, by blood or marriage nor is there any evidence to associate Oxman with Daly's derelictions. There is no evidence where the criminal actions of Daly took place and no evidence that he was employed on the premises. If Oxman, as an innocent investor and stockholder of this corporation, is to be penalized for Daly's criminal trouble it logically follows that the same reasoning can be applied to a much larger corporate licensee whose stock is largely distributed and extremely valuable. This would indeed make the whole idea of the corporate entity useless.

As the court below said: "There is not, in our opinion, a scintilla of evidence that would warrant our piercing the corporate veil in this case. This is not, to us, an appropriate case wherein such drastic measures should be taken. The appellate courts have stated, and we reiterate, that such action should not be taken when the rights of innocent parties would be prejudiced thereby . . . . In fact, had the Board acted upon the request for a transfer of said restaurant liquor license which was filed on October 3, 1962, to transfer said license to a responsible person, this matter

would not be before us today, and this 'undesirable' would not be a shareholder of a corporation holding a restaurant liquor license."

The Liquor Control Board can insist and public policy and justice demands that corporate officers, managers, etc., withdraw from any active participation in the licensed business where it is felt their influence is contrary to the dictates of the law or the board's regulations or the reputation of the corporation is prejudiced, but where innocent parties are involved a revocation is not warranted.

Order affirmed.